May it please the Court. Good morning, Your Honors. Steve Mosier for Plaintiff Appellant Safety Dynamics. I wish to reserve four minutes of my time for rebuttal and, in particular, to address the cross-appeal. The district court below erred in finding no duty to defend in a third-party suit for damages alleging false advertising under the Lanham Act. That claim was filed by a direct competitor. The theory of the case of the insured is that the complaint, underlying complaint, alleged false comparative advertising, in particular with respect to paragraph 31 and paragraph 41 of the underlying complaint. Shotspotter was alleging factually that advertisements were made by the insured comparing the insured's products to the direct competitor's products in a very small market. That's the quintessential allegation of false comparative advertising. False comparative advertising was a – encompassed within the theory asserted in the underlying complaint. It wasn't an explicit comparison, was it? No. The comparison was that the ads, the advertisements by the insured misled consumers concerning the relative cost and effectiveness of gunshot detection systems installed by the insured versus those installed by the direct competitor. But is it referring to the specific ones that were identified in the complaint? The specific statements? No. The complaint quoted verbatim some of the ads that were being complained about, but didn't, as not surprisingly, the text of every ad about which one was complaining under the Lanham Act, a very broad statute, would not necessarily be quoted verbatim in the underlying complaint. And I think the district court below erred by superimposing a pleading requirement on the underlying complaint that does not exist and that turns insurance law on its head. The inquiry from the perspective of the coverage court is not whether the underlying complaint is legally sufficiently pled, but whether there's any potentiality. That's the test for coverage, for a duty to defend, any potentiality for a covered claim. What the coverage court should look at is whether the underlying complaint excludes or forecloses the possibility of coverage. If it does not, and if there's some evidence consistent with the theory pled and consistent with the facts pled in the complaint, if there's some reasonable construct of evidence that either exists directly or that may exist consistent with the theory and the facts, then the duty to defend arises. Actually, the duty to defend not only arises at the outset. It continues all the way through the case. And that's why we made five separate tenders of defense. As discovery continued, as we obtained additional evidence from the insurance carrier, we can, you know, repeatedly re-tendered the defense. Did you raise those documents to the trial court in the summary judgment proceedings, the advertisements that were produced in discovery? Were those put before the trial court? Some, but not all. The two probably best texts of the advertisement were ER-60 and ER-65. Complete illustration of why a duty to defend arose in this case. And those two particular ads were presented to the court. They were presented in the context, a little bit later on in the proceeding, in the context of the cross motions for summary judgment on the duty to defend. But they were clearly presented to the court. They were presented on the bad faith argument? They were presented in the context of that briefing. Which that? What does that refer? That briefing on the bad faith breach of the duty to defend. Tell them what those motions are, but I'll read them. Well, actually, the argument was on the what the court did was bifurcated the bad faith claim, had an oral argument on the duty to defend claim, and then after that oral argument, dismissed our complaint, found no duty to defend, and then also dismissed the bad faith claim as without stated reason, apparently as moot. But the documents were before the court. Absolutely. Absolutely, Your Honor. In reference, actually in the argument, oral argument on specifically this duty to defend issue that was argued to the court. So they raised, you know, they asserted exclusion provisions also as a basis for a denial. Right. And in particular, the nonconforming goods exclusion is the primary, well, is what the, is the additional basis upon which the district court denied a duty to defend here. That also was error. And that error is frankly illustrated by the court's misunderstanding of the underlying complaint. If the underlying complaint is seen as it plainly, it consistently alleges as a complaint of false comparative advertising, then according to the district court's own decision and ruling, that policy exclusion would be inapplicable. It's inherently inapplicable if, to the concept of false comparative advertising, because the concept of false comparative advertising has within it the suggestion that one is comparing one's own products to another's products. And as soon as that comparison to the other's products is made, according to the district court's own opinion and rationale, false comparative advertising would have no application whatsoever to a claim for false comparative advertising. But you're arguing, too, that the injury was from the advertising and not from the nonconformity. Well, yes. The purpose of the nonconforming goods exclusion, the purpose is to exclude warranty type coverage from false advertising. It's a very clear purpose, and Appelman makes perfectly clear that that's the purpose. In this particular case, that exclusion has a number of elements, all of which were absent. And there's a complete failure of proof on every single element of the nonconforming goods exclusion. First of all, the nonconforming goods exclusion presupposes non – somewhat nonconformity. In here, the insurer – the insurance carrier admitted that it had no evidence of any falsity of any statement. There's a direct admission in the record to that effect acknowledged. First, they admitted that there was no evidence of falsity. There was no proof and no evidence that there was any nonconforming good. There was no proof and no evidence that if there was any false statement, that it related solely to the excluded parameters of quality and performance. One of the allegations in paragraph 31 of the complaint was that false comparisons were made of the insured's versus ShotSpotter's products on the element of cost. Cost is neither quality nor performance. So, again, what the Court should have been looking for is – the Court should have been looking for whether or not coverage could potentially exist. And instead, what the trial court looked at is the sufficiency of the underlying pleadings, and that is not an appropriate or proper inquiry. Let me ask you a question, counsel. Were these motions directed exclusively to the duty to defend, or was there also a summary judgment motion on coverage? The motion – the duty to defend was the first set of motions that were addressed, and then the second set of cross motions addressed the bad faith failure to defend. So actually, both sets of motions were directed to the duty to defend. Okay. But there was not a summary judgment motion on coverage. Is this a different question on whether there's coverage or whether there's a duty to defend? The duty to defend was the subject of the initial set of cross motions. There – the bad faith motion was limited to bad faith failure to provide a defense, failure to – bad faith encompasses a much broader spectrum than the failure to investigate and failure to provide a defense. But we did not move on the entire spectrum of bad faith. We only moved on one specific element of it. Since the underlying suit raised the potential for liability for false comparative advertising, and even if – frankly, even if one were to reject the concept that false comparative advertising was sufficiently alleged, simply false advertising, which has the effect of disparaging another or its products, by itself meets – meets the coverage element of disparage and should have triggered the duty to defend that claim anyway, even if it wasn't properly characterized as false comparative advertising. Because the complaint raised the potential for coverage, the entire rationale – potential for coverage as false comparative advertising, the entire rationale underpinning the trial court's decision on both the duty to defend and the nonconforming goods exclusion fails. It also should be pointed out very briefly that the underlying complaint alleged a very small market. So ShotSpotter, a competitor, a direct competitor against the insured in a very small market, sued because of injury to it arising from false – allegedly false statements comparing the insured's products to ShotSpotter's products. That fact is undisputed and is directly relevant to the Court's ever-concerning requirement of naming ShotSpotter directly by name in the advertisements and putting that directly in the complaint. That's – this undisputed fact of a very small market is relevant to the requirement of – essentially, the trial court read into the word disparage the additional requirement that the disparagement must name the competitor directly by name or its product. Also, the trial court, in effect, superimposed a pleading requirement on the underlying complaint. That also was error. In any event, the correct legal analysis under Arizona law is whether under the theories pled, here the Lanham Act, and the facts alleged, here paragraph 31, in the underlying complaint, plus any extrinsic evidence, ER 60 and 65, made known to the parties in the court, there's any potentiality for coverage. One illustration demonstrates there was a duty to defend. If Exhibit 60 or Exhibit 65 or some other ad comparing the insured's products to the direct competitor's exist and is false and is offered into evidence in the underlying case, it comes directly into evidence, it's relevant to a Lanham Act claim, it's not objectionable, no one could say I'm unfairly surprised, and it could be offered into evidence. If found to be false, the insured could be found liable. That, by itself, demonstrates a duty to defend. As to the nonconforming goods exclusion, again, as Your Honor indicated, the issue for the nonconforming goods exclusion is whether the injury arises from the nonconformity of the good or whether the injury arises from the fact of the publication of the statement. Well, you know, if you go to your, I think it's the third cause of action, the underlying complaint talks about performance. Yeah. The third cause of action. The third cause of action talks about costs or performance, yes. Yeah. One of those parameters is mentioned in the nonconforming goods exclusion, but one of them is not. So that parameter, not having been mentioned in the nonconforming goods exclusion, there is a possibility that the case could be tried and the only respect in which the insured is found liable in the underlying case is because they falsely compared the cost of their products versus the cost of their goods. But you might have a harder argument if they just had, if the underlying complaint only had the third cause of action, but they have the fourth and the fifth cause of action. Right. But if there's coverage on any cause of action. Right. That's correct. I mean, there's a duty to defend. Right. Right. Here the injury, well, again, there was a complete failure of proof by the insured, which bears the burden of proof on that third cause of action. Finally, the district court on the Cross Appeal correctly determined that the intellectual property infringement exclusion did not foreclose all potentiality of coverage under the Lanham Act. The words unfair competition, unmoored by context, are inherently subject to multiple meanings. The Court below correctly found that the undefined policy term unfair competition has multiple meanings and differs in meaning from jurisdiction to jurisdiction. That term, unfair competition, as used in these particular policies, is given context by appearing along with other similar terms, all of which relate to some type of intellectual property or some type of infringement. The heading and the subheading of this exclusion, the heading is intellectual property rights violations, and the subheading is infringement of copyright trademark trade secret patent. So, again, both the heading and the subheading give context to this particular term. Would you like to save the balance of your time for rebuttal? Yes, Your Honor. Thank you very much. Good. Thank you. May it please the Court. Joshua Rogers on behalf of General Star Indemnity Company. Your Honor, there's basically four major subject areas here that we have to address. And as you know, the briefing is quite extensive, and we've laid out a lot there. But I think there's several things that need to be highlighted. First of all, with regard to what I like to call the door to coverage, I look at coverage as a house. There's a door that has to be entered into first, and that's the insuring agreement of the policy. Here, the only argument to get in through that door is the personal and advertising injury coverage provided under the policy. Specifically, there's one argument made here with regard to getting in through that door of coverage. And that is that these counts three and four of the second amended complaint from the underlying litigation allege a product disparagement claim under the Lanham Act. And I think this is where the views diverge here. And my opposing counsel likes to focus on the word disparage. But what we have to keep in mind here is what personal and advertising injury coverage is. And this isn't like when you look at the bodily injury and property damage portion of a policy, where you have something based on an occurrence. No, this is personal and advertising injury, and it was created to provide coverage for specific enumerated offenses. That's how it's referred to as offenses. And those specific enumerated offenses, it's malicious prosecution, wrongful imprisonment, wrongful entry onto land eviction, those types of things. It provides coverage for specifically enumerated offenses. And one of those is disparagement of another's goods, products, or services. So what it's intending to provide coverage for is situations in which there is a product disparagement claim. Here, what they're specifically claiming is product disparagement under the Lanham Act creates coverage. So the question is, and we have to ask here, does that claim exist here? Not whether they can prove it. No, but it's a potentiality. You're talking about a duty to defend. So the issue is not whether they have a Twomley v. Iqbal proof claim under the Lanham Act. Isn't it the potentiality of coverage under the terms of the policy and whatever else is known to the insurer by virtue of what's made known from the insurer? Yes, Your Honor. You have to look, but you have to look at the face of the complaint and what's being alleged. And what else you know has to be viewed in light of what has been alleged. Well, it could be or, I mean, the case evolves, and the what comes out during discovery can become part of what the insurer knows and should take into account in the context of the type of case that it is. Yes, Your Honor. But the fact is what has been alleged and the basis for the claims hadn't been changed. They are what they are. We have to go based on the face of the complaint and anything else known viewed in light of the complaint to determine whether there's coverage. And here, if we look at the complaint, what they allege are specific statements made about the insured's product, safety dynamics product, and their product alone. There are no statements in there made in the complaint that talk about Shotspotter's product. But isn't a false statement about why my product is better a way of disparaging my competitor's product? Your Honor, the case law we've cited talks about this. If you're merely touting your own product, saying how great your own product is, that's what every company does. No, but if it says why it's better, why our products are different, as the ad says. Well, Your Honor, that doesn't that imply that yours and disparage under your policies just says disparage. So doesn't that imply that your policy is that the other person's policy is not as good or as tainted or doesn't perform as well or whatever? Your Honor, with regards to specifically those advertisements, you talked about it a little bit with my opposing counsel, with regard to those weren't raised as part of this motion for summary judgment on coverage. And actually, this was, from our perspective, our motion for summary judgment was on coverage. Coverage in its entirety, and the duty to defend is based on if there's no coverage, there's no duty to defend. But our argument was there was no coverage. But those advertisements were, one was attached, ER-60, was attached simply to a letter, one of the tender letters that was attached to the statement of facts with the MSJ for bad faith, which was not before the court on that date of oral argument. Were they discussed at the oral argument? There was one statement that was basically where the judge asked if any of the, any of the advertise, or any of the statements were made about or referenced ShotSpotter. And opposing counsel made the comment that I believe one of them, or one of them references them specifically. But there's no, there's no and never any argument that those statements about ShotSpotter, even if it referenced ShotSpotter, that those statements were ever made in a way to compare or make a disparaging comparison. Can I take you to the complaint for just a second? The third cause of action, for example, if you have it handy. I do. So paragraph 23 says safety dynamics is a direct competitor with Spot, ShotSpotter in the market for gunshot detection systems for municipal law enforcement. That's correct. And the next paragraph says the market for gunshot detection systems for municipal law enforcement is a direct competitor with SpotShotSpotter. And the next paragraph says the market for gunshot detection systems for municipal law enforcement is very small. Then if you go to the fourth cause of action, they incorporate, by reference, every other paragraph. Then they make out, oh, they have these allegations about the, about the advertisements and the segment and whatnot, and then they say safety dynamics, literally false claims are material to the relevant purchasing public. It goes on, false claims. Then it says in paragraph 44, ShotSpotter has been damaged and is likely to be damaged by the literally false claims made by safety dynamics and distributed in the promotional materials of safety dynamics. Now, why isn't that, for purposes of making a decision about the duty to defend, as Judge Vance just went through, you know, it's very generous under Arizona. I think this is Arizona law, if I'm not mistaken. Yes, Your Honor. It's very generous. I don't know, once you look at that, I don't know why that doesn't lead one reasonable conclusion that there is a potential. ShotSpotter hasn't bought a system and is concerned that they bought a bad system and now they're going to sue you for false advertising, among other things. That would be the warranty case. But they are complaining that you've drawn a, sorry, not you, but that safety dynamics has drawn a comparison between their product and ShotSpotter's product, and that they have misled the public, and therefore ShotSpotter has been damaged. You know, what they're alleging is, and if you look at the specific statements that they say are false, are literally false, because if you look at 31, paragraphs 31 and 41, those paragraphs reference the literally false statements and what, how that leads to the damage to safety dynamics. But if you look at the literally false statements, or the statements that are claimed to be literally false, all of those are about the effectiveness, performance of safety dynamics-owned products. So what they're saying is- Well, that's not paragraph 31. They've misled members concerning the relative cost and effectiveness of gunshot detection systems installed by safety dynamics versus gunshot detection systems installed by ShotSpotter. Right. But paragraph 31 says safety dynamics, literally false claims. Right. So what are those false claims? So we have to look back at the preceding paragraphs to determine what those false claims are specifically with regard to how good safety dynamics was claiming their product was. But Lanham Act claims can involve indirect comparisons. It can involve invidious comparisons. This language in the context of saying that, you know, you've lied about your product and the effect is to create, in the public mind, the misperception that your product is better than ours on price and performance, seems to me to state that there's a claim for product disparagement. We're looking at whether or not it raises the potentiality of a claim for product disparagement. Right, Your Honor. But I think the problem here is, if you look at the case law, various cases we cited, total cost, performance, there are several cases in there that talk about it. Look, if you're just saying how great your product is, even if it's, you know, a limited market, the total cost case talks about it in terms of phone card companies, and it's a very specific market, they have a very specific way of making money, it's based on the advertisements that are put out there. And in that case, look, they're merely touting their own product, then it doesn't qualify as disparagement of somebody else's, unless you're making reference to that other product. And here, the specific, literally false statements that paragraphs 31 and 41 talk about, you go back, and those literally false statements are statements that are about Safety Dynamics' own product and nothing about ShotSpotter. Part of your argument, counsel, seems like the kind of argument that you would have made on the merits had you been defending Safety Dynamics and were contesting what the coverage of ShotSpotter's complaint was. You just never got to that point. You dismissed it out of hand, and this seems to be, you keep raising this, it's sort of an Iqbal problem, but Iqbal objections here are really raised against ShotSpotter, not against Safety Dynamics. Your Honor, it's not an Iqbal argument, because, again, Arizona law is clear, you have to look to the face of the point and determine whether those allegations, and here, whether there's a product disparagement claim made at all, whether those allegations give rise to a possibility of coverage. But isn't the law in Arizona that you have a duty to defend even if the complaint couldn't survive a Rule 12 motion? The rule in Arizona is if there's a possibility of coverage from looking at the face of the complaint and what else is known to the insurer under those circumstances, if there's a possibility or potential for coverage, then there is a duty to defend, yes. But these allegations in this complaint and what was known to the insured, or the insurer, simply don't give rise to a product disparagement claim. I do want to address a few other things. We're going to run quickly out, but specifically with the nonconformity exclusion. Under that exclusion, I think it's important to point out that there's nothing in that exclusion, and Total Call actually makes kind of the same argument. There's nothing in that exclusion that limits it to consumer versus competitor warranty claims. And in fact, if you look at the exclusion, if my opposing counsel is correct, and this only applies, the nonconformity exclusion only applies to warranty claims, under those circumstances, it would never apply because this exclusion specifically applies to personal and advertising injury. The definition of personal and advertising injury, Your Honors, is again limited to enumerated offenses, false arrest, detention, or imprisonment, malicious prosecution, wrongful eviction, oral or written publication of material that slanders, libels, or disparages, oral or written publication that violates a person's right of privacy. This exclusion applies to, the nonconformity exclusion applies to personal advertising injury, those offenses arising out of the failure of goods, products, or services to conform with any statement of quality or performance made in your advertisement. It would have no application if it didn't apply to disparagement of a person or organization's goods, products, or services. This, this, you have to give meaning under Arizona law to all parts of the policy. This exclusion has to apply based on its very terms, talking about failure of goods, products, or services to conform to any statement, has to apply to disparages of a person's goods, organization's, or a person's or organization's goods, products, or services. That's the only circumstances it can apply. And if he's right that it only applies to warranty claims, it never applies. And this Court would not be giving any meaning to this exclusion. You're also trying to apply it to statements that involve costs, which don't come with an exclusion. There is, if you look at the statements again, not paragraphs 31 and 41, which say what they misled to. But if you look at the actual statements, there's no statements about cost. But there is one statement, and I can't remember if it's 31 or 41. It says cost and effectiveness. So what? I don't understand your argument about that. Your Honor, if it's, if, if, if effectiveness is excluded because it failed to perform as it was supposed to, if that's their argument, if that's the basis for their claim, if cost is thrown in there as well, it's also excluded. Because you can't separate them out. They're part of one of the same. It's a whole lot to get in, to decide on a coverage dispute, not a cover, on a duty to defend dispute when there's a plain allegation that there's an invidious comparison on cost. Well, Your Honor, if you look at the exclusion again, it's personal advertising injury arising out of the failure of the goods to conform. And if it's arising out of, that term has been, has been defined and says it's causal connection. So by including both cost and effectiveness, including that causal connection, that, it can't be a loan cost, therefore, it's excluded under that provision. It, you can't separate the two. Your Honors, I'll go quickly to the intellectual property exclusion, our, our cross appeal here. Specifically, you know, I, I think it's interesting. Safety Dynamics wasn't confused by this heading. They've admitted previously in the briefing that the unfair competition, unfair competition claim, cause of action 5 in the second amended complaint in the underlying case, would have been excluded under the IP exclusion. But that's a palming off claim, isn't it? It's identical. They're, they're word for word the same. No, I don't think they are. Oh, they're exactly the same, Your Honor. I, I ask you to, to review it. They're, they're identical claims. It's just the headings changed. And, and that's, that's what we have here. It's just one's a claim made under New York law, and one's a claim made under the Federal law of unfair competition, which the Lanham Act has been clearly and continuously referred to as the Federal unfair competition claim. But the point I want to make here is, look, this heading issue is a red herring. I mean, there's, there's, these are unfair competition claims. They're Lanham Act claims of unfair competition. They've referred to them as claims of unfair competition in their underlying briefing, pleadings. They're claims of unfair competition. There's no doubt about that. So the way they have to get around is to now say, well, there's the heading here. The heading here says it's, it's a situation where, where it can only be those claims for, of unfair competition grounded in, in trademark, patent, copyright, et cetera, based on that heading. But if you do that, you render every provision in that exclusion after sub part one superfluous. They, again, they have no meaning if that happens. Here, the sub part one specifically addresses claims arising out of trademark, patent, copyright infringement. And then it gets to the other side of it. I used to go back to my earlier point. Count 5, unfair competition under New York law, says safety dynamic has acted in bad faith and without justification and has misappropriated ShotSpotter's goodwill by falsely associating itself and its products with ShotSpotter and its systems and distributing literally false statements regarding the capabilities of safety dynamics products. And I think that could be read as a palming off claim, which is consistent with the way some courts have interpreted this exclusion. Your Honor, I think if you read the, the, the, the, what they asked for in the judgment. You told me to read the claim. I read it. Right. But I, I, Your Honor, I, I, respectfully, I disagree. I think that those, those claims are simply the same thing. I mean, they've, they've claimed that they're literally false claims. And it goes back to what those statements that were made. It was about their own product and tend to confuse the capabilities, qualities. Again, going to the capabilities, along with the nonconformity exclusion, again, confirms that. Why isn't this term, unfair competition, ambiguous? Your Honor, it's, it's been interpreted before. Every court that's looked at, even the courts they cite to have said it's not ambiguous. It refers to common law tort of unfair competition, which the Lanham Act has been continually referred to as the basically the codification in Federal law of the tort of the common law tort of bad faith. And, and, and these, these claims, Your Honor, of unfair competition, if you look at them, they, they place so much. Is it wrong that there's a substantial body of case law that limits this exclusion to Pomeroy claims? Is that just wrong? Is that not true? No, that's, that's part of the history. And it, it, it's part of the history of what it was originally, but much more was added in. The case law is very clear about that. And even the Bank of the West case that they cited, it referred to it, but it referred to it in context of the history of the claim. It started out as that, but it's encompassed more. And again, that encompasses the claims that we're talking about here. And, and again, you would eliminate every other subpart, because that first subpart of that exclusion contains trademark, patent, copyright infringement, and gives the examples, including but not limited to, and doesn't put unfair competition as part of that list. This isn't just an example. It goes to now subpart 2. Okay.  So, thank you, Your Honor. We got it. Your time has expired. Thank you, counsel. Thank you. You have a few minutes for rebuttal. If either the nonconforming goods exclusion or the intellectual property infringement exclusion is given the construction that's argued for by General Starr, there is no coverage left. There's no question about that. General Starr has also just misstated the holding of this court and of the California Supreme Court with respect to the definition of unfair competition given in the vast majority of cases that have addressed this. This court held, correctly stated, that unfair competition has been given the meaning of common law unfair competition. This court's decision then says, immediately after that, dash, passing off one's goods for those of another. The palming off, that's the limited definition that was given to the term unfair competition. That's the judicial construction that was imposed on that term. When unfair competition appeared as a coverage provision, which is supposed to be broadly interpreted, it was nevertheless, in that context, more narrowly construed by courts. Now, though, what General Starr has done is taken the words unfair competition from the coverage provision and moved those words into the exclusion. And now, and exclusions are supposed to be narrowly construed in favor of the insured to broaden coverage, but now what General Starr has done is moved those words into the exclusion and now argues contrary to the vast bulk of authority all over the country, including this court construing California law, now General Starr argues for the broadest possible construction of that term. If General Starr's construction of that term is given effect, this policy on advertising injury is worthless, should be thrown out into the trash because it means nothing. Thank you, Your Honor. We respectfully ask that judgment be entered in favor of the insured on the duty to defend, that the case be remanded on the, for trial on the bad faith claim. Thank you very much. Thank you, counsel. We appreciate your arguments. The matter is submitted at this time. That will end our session for this morning. Thank you.
judges: Vance, Paez, Bybee